**EXHIBIT B**

# UNITED STATED DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POWERMAT TECHNOLOGIES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> BELKIN INTERNATIONAL, INC., <br><br> Defendant. | Case No. 1:19-cv-878-VSB |

**DEFENDANT BELKIN INTERNATIONAL, INC.'S ANSWER AND COUNTERCLAIMS**

Defendant Belkin International, Inc. ("Belkin") respectfully submits this Answer and Counterclaims to the Original Complaint (the "Complaint"), dated January 29, 2019, filed by Plaintiff Powermat Technologies, LTD. ("Powermat").

## ANSWER

In response to the specific allegations in the Complaint, Belkin states as follows:

1.  Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies them.

2.  In response to paragraph 2, Belkin admits that it is a Delaware corporation with its principal place of business at 12045 E. Waterfront Dr., Playa Vista, California 90094.

3.  Paragraph 3 sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed necessary, Paragraph 3 is denied.

4.  Paragraph 4 sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed necessary, Paragraph 4 is denied.

1

5.  Paragraph 5 sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed necessary, Paragraph 5 is denied.

6.  Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 and therefore denies them.

7.  Belkin admits the allegations in paragraph 7.

8.  Belkin denies the allegations in paragraph 8, but admits that wireless charging generally requires a transmitter and receiver.

9.  Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore denies them.

10. Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies them.

11. Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies them.

12. Belkin denies the allegations in paragraph 12, but admits that industry organizations have published technical standards for wireless charging technologies.

13. Belkin denies the allegations in paragraph 13, but admits that industry organizations have published technical standards for wireless charging technologies

14. Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and therefore denies them.

15. Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies them.

16. Belkin admits the allegations in paragraph 16.

17. Belkin denies the allegations in paragraph 17, but admits that it communicated with Powermat in 2015 about producing a PMA-enabled wireless charging device.

18. Belkin admits the allegations in paragraph 18.

19. Belkin admits the allegations in paragraph 19.

20. Belkin denies the allegations in paragraph 20 and respectfully refers the Court to the License Agreement for a full and complete statement of its terms.

21. Belkin denies the allegations in paragraph 21 and respectfully refers the Court to the License Agreement for a full and complete statement of its terms.

22. Belkin lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 and therefore denies them.

23. Belkin admits the allegations in paragraph 23.

24. Belkin admits the allegations in paragraph 24.

25. Belkin denies the allegations in paragraph 25.

26. Belkin admits the allegations in paragraph 26.

27. Belkin denies the allegations in paragraph 27 and further states that Belkin validly terminated the License Agreement on November 28, 2017.

28. Belkin denies the allegations in paragraph 28, but admits that it started selling wireless charging products in 2015.

29. Belkin denies the allegations in paragraph 29 and respectfully refers the Court to the License Agreement for a full and complete statement of its terms.

30. Belkin denies the allegations in paragraph 30.

31. Belkin denies the allegations in paragraph 31.

32. Belkin denies the allegations in paragraph 32.

33. Belkin admits the allegations in paragraph 33.

34. Belkin denies the allegations in paragraph 34.

35. Belkin denies the allegations in paragraph 35.

36. Belkin denies the allegations in paragraph 36, but admits that in March 2017 Powermat requested royalties to which it is not entitled from Belkin.

37. Belkin denies the allegations in paragraph 37, but admits that through June 2017 Powermat continued to demand royalties to which it is not entitled from Belkin.

38. Belkin denies the allegations in paragraph 38, but admits that Belkin's legal counsel communicated with Powermat in November 2017.

39. Belkin denies the allegations in paragraph 39.

40. Belkin denies the allegations in paragraph 40 and respectfully refers the Court to Belkin's November 28, 2017 letter for a full and complete statement of its contents.

41. Belkin denies the allegations in paragraph 41 to the extent they suggest that royalties were due, but admits that Belkin owed no royalties to Powermat in 2018.

42. Belkin denies the allegations in paragraph 42, but admits that on December 28, 2018, Powermat attempted to invoke the Agreement's auditing provision, notwithstanding that Belkin validly terminated the Agreement more than a year earlier on November 28, 2017.

43. Belkin denies the allegations in paragraph 43.

44. Belkin denies the allegations in paragraph 44 and respectfully refers the Court to the License Agreement for a full and complete statement of its terms.

45. Belkin denies the allegations in paragraph 45.

46. Belkin denies the allegations in paragraph 46.

47. Belkin denies the allegations in paragraph 47.

4

48. Belkin denies the allegations in paragraph 48.

49. With respect to paragraph 49, Belkin repeats and incorporates by reference the answers contained in paragraphs 1 through 49 above.

50. Belkin denies the allegations in paragraph 50, but admits that the Powermat and Belkin entered into the License Agreement and respectfully refers the Court to that agreement for a full and complete statement of its terms.

51. Belkin denies the allegations in paragraph 51.

52. Belkin denies the allegations in paragraph 52.

53. Belkin denies the allegations in paragraph 53.

54. Belkin denies the allegations in paragraph 54.

55. Belkin denies the allegations in paragraph 55.

56. Belkin denies the allegations in paragraph 56.

57. Paragraph 57 sets forth a legal conclusion to which no response is necessary. To the extent a response is deemed necessary, Paragraph 57 is denied.

## AFFIRMATIVE DEFENSES

Belkin asserts the following affirmative defenses to the Complaint. Belkin reserves the right to amend its defenses, including asserting additional defenses that become known or further apparent through discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

58. Powermat's breach of contract claim is barred by the doctrines of waiver and laches given its statements and conduct before executing the contract and during the first 16 months of the contractual term.

5

## SECOND AFFIRMATIVE DEFENSE

59. Powermat's breach of contract claim is barred by the doctrines of estoppel and unclean hands given its statements and conduct before executing the contract and during the first 16 months of the contractual term.

## THIRD AFFIRMATIVE DEFENSE

60. Powermat's breach of contract claim is barred because the License Agreement is unenforceable for lack of consideration with respect to Qi-only wireless charging products.

## FOURTH AFFIRMATIVE DEFENSE

61. Powermat's breach of contract claim is barred because the License Agreement contains a mutual mistake and neither party intended or understood that Belkin would pay royalties on Qi-only wireless charging products.

## FIFTH AFFIRMATIVE DEFENSE

62. Powermat's breach of contract claim is barred or limited by the License Agreement's Limitation of Liability provision, which precludes Powermat from recovering consequential or indirect damages and caps Belkin's potential liability to Powermat at the total royalties paid over the twelve months immediately preceding the date on which Powermat's claim was made.

## **COUNTERCLAIMS**

63. Belkin is a manufacturer of consumer electronics accessories, including wireless charging devices for smartphones and tablets. On November 3, 2015, Belkin and Powermat entered into a License Agreement ("the Agreement") under which Belkin obtained a license to certain rights necessary to implement Powermat's wireless charging technology, known as the Power Matters Alliance ("PMA") standard. In exchange, Belkin agreed to pay Powermat a

royalty on each PMA-enabled wireless charging device that it sold, including devices employing both the PMA standard and the competing Qi standard, which was developed by a different industry group. Belkin did not, however, agree to pay Powermat royalties on wireless charging devices employing *only* the Qi standard.

64. In 2013, Belkin approached Powermat for the sole purpose of licensing PMA technology, and in the two years that followed, Belkin and Powermat never discussed even the possibility of Belkin paying royalties on Qi-only devices. That is because neither Belkin nor Powermat believed that Powermat's license covered the Qi standard, which Powermat played no role in developing.[1] Indeed, Powermat told Belkin only weeks before signing the Agreement that "Powermat provides only a license for Powermat IP required for implementing the PMA standard, *and nothing more*. . . . Powermat provides only the ability to license the use of our patents as part of the implementation of your product *for meeting the PMA standard*."

65. Belkin and Powermat's intent to limit the License Agreement's scope to PMA-enabled wireless charging devices is clear from the definition of Licensed Chipsets, which are a component in wireless charging devices. The Agreement states that Licensed Chipsets "means a chipset (a) for wireless power or that is capable of enabling wireless power charging for either Licensed Receivers or Licensed Transmitters, (b) *that implements elements of the PMA Specification or both the PMA Specification and the Qi Specification*, and (c) which, once joined with other components, becomes a Licensed Receiver or Licensed Transmitter." Notably, the definition of Licensed Chipsets does not include wireless charging chipsets that implement *only* the Qi Specification.

---

[1] Even with regard to the PMA standard, Belkin does not believe that Powermat's underlying patents are valid and reserves the right to challenge those patents in an inter partes review or other proceeding.

7

66. The Agreement's intended scope is also confirmed by the parties' course of performance. For more than sixteen months after the Agreement was executed, Belkin paid Powermat quarterly royalties *only* on PMA-enabled wireless charging devices. And while it was public knowledge that Belkin was also selling Qi-only wireless charging devices, Powermat never suggested that it was owed royalties on those devices. Only in March 2017, after it became evident that Qi was going to eclipse PMA as the industry standard (much as VHS eclipsed Betamax), did Powermat change its interpretation of the Agreement and begin demanding royalties from Belkin on Qi-only devices.

67. But as Belkin told Powermat in April 2017, that was never the parties' agreement. Belkin agreed to pay Powermat royalties only on PMA-enabled or PMA- *and* Qi-enabled wireless charging devices. And when Belkin stopped manufacturing PMA-enabled wireless charging devices in 2017, Belkin informed Powermat of this fact, paid all royalties due, and terminated the License Agreement, which no longer served any purpose.

68. To support its new position that the Agreement requires Belkin to pay royalties on Qi-only devices, Powermat has pointed to the Agreement's definitions of Licensed Receiver and Licensed Transmitter, which conflict with the definition of Licensed Chipsets insofar as they include Qi-only devices. But the definition of Licensed Chipset must take precedence because it would be nonsensical for Belkin to owe royalties on a wireless charging device that contains a non-Licensed Chipset.

69. In any event, the contemporaneous evidence and the parties' course of performance demonstrates that the inclusion of the phrase "or Qi Specification" in the definitions of Licensed Receiver and Licensed Transmitter was a mutual mistake and/or scrivener's error. Accordingly, to the extent the License Agreement is still effective and the definition of Licensed

8

Chipsets does not take precedence, the Agreement must be reformed to reflect the parties' actual intent, as reflected in more than 16 months of performance and all of their pre-execution communications.

## FIRST CAUSE OF ACTION
## (REFORMATION)

70. Belkin repeats and re-alleges the allegations contained in paragraphs 63 to 69 above.

71. Belkin and Powermat executed the License Agreement on November 3, 2015.

72. At the time they executed the License Agreement, Belkin and Powermat each understood and intended that Belkin would pay royalties only on PMA-enabled wireless charging devices.

73. Neither Belkin nor Powermat understood or intended that Belkin would pay royalties on wireless charging devices implementing only the Qi standard and not the PMA standard.

74. To the extent the License Agreement is still effective and the definitions of Licensed Receiver and Licensed Transmitter or any other provision in the License Agreement requires Belkin to pay royalties on Qi-only wireless charging products, the License Agreement must be reformed to reflect Belkin and Powermat's actual agreement, as reflected in their conduct for more than a year after the Agreement was executed and their communications prior to the execution date.

## SECOND CAUSE OF ACTION
## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

75. Belkin repeats and re-alleges the allegations contained in paragraphs 63 to 69.

9

76. Pursuant to New York law, the License Agreement contains an implied covenant of good faith and fair dealing that Powermat breached when it demanded royalties from Belkin on Qi-only products to which Powermat knew it was not entitled under the Agreement and which Powermat knew were not covered by its license.

77. As a result of Powermat's breach of this covenant, Belkin has been damaged in an amount to be determined at trial.

WHEREFORE, Belkin prays for judgement in its favor and against Powermat as follows:

A. The dismissal of Powermat's Complaint and all claims included within it against Belkin, with prejudice;

B. To the extent Belkin has not validly terminated the License Agreement, an order reforming the Agreement to reflect Belkin and Powermat's understanding and intent that Belkin would pay royalties to Powermat only on PMA-enabled wireless charging products;

C. A money judgment against Powermat for breaching the implied covenant of good faith and fair dealing in an amount to be determined at trial;

D. A grant of reasonable attorneys' fees, expenses, and costs incurred by Belkin in this action; and

E. Such other and further relief as this Court deems just and proper.

Dated: March 21, 2019 Respectfully submitted,

By: */s/ Andrew J. Frackman*
Andrew J. Frackman
Brad M. Elias
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: afrackman@omm.com
Email: belias@omm.com

Ryan K. Yagura
(*admitted pro hac vice*)
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407
Email: ryagura@omm.com

Matthew Kline
(*admitted pro hac vice*)
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Office: (310) 553-6700
Fax: (310) 246-6779
Email: mkline@omm.com

*Counsel for Defendant Belkin International, Inc.*